

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
**ATTORNEY GENERAL**

Honorable Bascom Giles
Commissioner, General Land Office
Austin, Texas

Dear Sir:                    Opinion No. O-3758

> Re: Right of lessee under "Relinquish-
> ment Act" lease to a refund of
> bonus paid State under lease for-
> feited by Commissioner for non-
> payment of rental and right to
> refund of bonus on new lease
> executed after forfeiture.

        This will acknowledge receipt of your letter of
July 11, 1941, wherein you request the opinion of this de-
partment upon the question hereinafter stated. In order
to present all of the facts bearing upon your question, we
quote from your letter as follows:

> "On June 1, 1936, Glenn O. Ashton, a feme sole,
> executed a private oil and gas lease covering said
> SW 1/4 of said Section 12, Block A-42, to Clifford
> Ashton for a primary term of 10 years, said lease
> reciting, 'The said lessor, Glenn O. Ashton, being
> agent for the State of Texas, in the leasing of
> said land; and it is further agreed that this lease
> shall run for a term of 10 years from the expira-
> tion of the original lease, held by the Amerada
> Petroleum Corporation, which expires on June 2,
> 1937,' and upon the filing of a photostatic copy
> of said lease in the Land Office March 25, 1938,
> same was set up in Mineral File No. 23272 in the
> name of Clifford Ashton.

> "On March 25, 1938, Clifford Ashton paid into
> this office $160.00 as bonus on said lease 23272.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"On April 6, 1938, this lease was endorsed as forfeited by Bert V. Bollinger, then Acting Commissioner, on the ground of non-payment of rentals. You will notice that this lease was not effective until June 2, 1937. Apparently the first rental date would be June 2, 1938.

"After the forfeiture, Glenn O. Ashton and Mrs. Dora Roberts, both feme soles, acting individually and as agents for the State of Texas, executed a private oil and gas lease on this land to Clifford Ashton for a primary term of 10 years. This lease was filed in the Land Office April 15, 1938, and a bonus of $654.00 was paid thereon.

"Mr. Clifford Ashton has requested of this office a refund of either the $160.00 bonus paid under lease 23272, which was forfeited on April 6, 1938, or the $654.00 bonus paid under the lease executed April 6, 1938, on the grounds that he is being forced to pay two bonus payments on what amounts to the same lease, and that the forfeiture of the original lease was erroneous for the reason that rentals were not yet due thereon at the time of forfeiture.

"I would appreciate the benefit of your opinion upon the following question:

"Is Clifford Ashton entitled to a refund of either of the above mentioned sums according to the facts set out herein?"

You enclosed a photostatic copy of Lease No. 23272, which we have examined in connection with your request. We acknowledge receipt also of your certificate stating the facts outlined in your letter.

You do not so state, but it is apparent from the facts contained in your letter that the tract of land involved is public free school land sold by the State to Glenn O. Ashton, or her predecessor in title, under a mineral classification. The minerals in and under school land, which was

duly classified as mineral land by the Commissioner prior to sale, are reserved to the school fund of the State. See Article 5310 R. C. S., 1925.

We shall hereafter refer to the lease filed in the Land Office on March 25, 1938, as the first lease and to the lease filed there on April 15, 1938, as the second lease.

Without going into the validity or propriety of the Commissioner's action in forfeiting the first lease, we are of the opinion that he may not return any of the funds paid into the school fund under either of the two leases in question.

· The Commissioner of the General Land Office has only such powers as are conferred upon him by the Constitution and Statutes. See Article 5251 and 5307 (R. C. S. 1925); 34 Tex. Jur. 31; and cases cited.

"No authority can be exercised by the Commissioner of the General Land Office except such as is conferred on him by law." State v. Robinson, 119 Tex. 302, 30 S. W. (2d) 292, 297.

We have diligently examined the Constitution and Statutes of this State and have found no provision which authorizes the Commissioner to return the money in question.

Article 5411 provides for the return by the comptroller of money which "has been in good faith paid into the State Treasury upon lands for taxes, lease and purchase money, for which, on account of conflicts, erroneous surveys, or illegal sales, patents cannot legally issue" or upon which patents are legally cancelled.

The article clearly applies only to situations where the State could not or did not vest legal title in the purchaser of land and is so limited in its scope. It neither covers the situation you outline expressly nor does it impliedly extend to it.

Although, we consider what we have stated a suffi-

cient bar to a return by the Commissioner of either sum to the lessee, we wish to mention another factor in the particular transactions you have outlined, which would prevent a recovery by the lessee.

When the forfeiture of the first lease occurred, the lessee had the right to compel the commissioner, if that official had acted erroneously, to re-instate the lease. 34 Tex. Jur. 31.

Instead of pursuing the remedy provided by mandamus, the lessee under the facts you have submitted proceeded to secure the second lease and to file same with the Land Office. This second lease could have had no vestige of validity so long as the first lease was valid and outstanding. The lessee must, therefore, be held to have acquiesced in the forfeiture by the Commissioner. See Watts v. Cotton, 26 Civ. App. 73, 62 S. W. 931.

In the case cited above, there was involved an application for a grazing lease on certain school land under the provision of Sayles' Ann. Civ. St., Art. 4218r and 4218s, now Article 5336, R. C. S., 1925. This application was erroneously rejected by the Commissioner and the Court of Civil Appeals disposed of the question in the following language:

"... For correction of this error he (the applicant) doubtless had a remedy by mandamus against the commissioner of the general land office; but, so far from pursuing that remedy, he must be held, under the facts of this case, to have acquiesced in the erroneous ruling of the commissioner, however, much he may have dissented from it, . . ." Watts v. Cotton, supra.

In Borchers v. Mead (Civ. App. 1897) 43 S. W. 300, error denied, the court had before it the status of a grazing lease which had been erroneously cancelled by the Land Commissioner. The validity of an award of school land hinged upon the effect of the cancellation of the prior lease, -- if the cancellation was invalid, the award was void.

Holding that the award was valid and binding, the court of Civil Appeals declared that even though it be granted that the lease, under the facts, should not have been cancelled, "It is yet clear that it was in fact cancelled." The lease, having been eliminated by the cancellation, it was held to constitute no bar to the validity of the award.

Under the same reasoning, the first lease to Mr. Ashton having been forfeited, the second lease must be held valid under the facts you have submitted.

The endorsement of forfeiture placed upon the first lease by the Commissioner and the acquiescence in that action by the parties to the lease as shown by their immediately entering into a new lease and by their not exercising their remedy of mandamus, effectively terminated the first lease, so far as the lessee was concerned. There can, therefore, be no question as to return of the bonus paid on the second lease.

We are also of the opinion that the lessee is in no position to demand a return of the bonus paid on the first lease. That lease was executed on June 1, 1936, and recited that it was to run for a term of ten years from June 2, 1937. The lease was forfeited on April 6, 1938, by the Land Commissioner. It is thus apparent that that lease was outstanding, unforfeited, for more than twenty-two months from the date of its execution, and for more than ten months after the date it was to take effect. Even viewing the situation in the light contended by the lessee, that is, that the lease was not permitted to remain in effect for an entire year after June 2, 1937, the fact remains that it was outstanding, unforfeited, for substantially one year from the date it purported to become effective. Clearly, under these facts, the lessee would not be entitled to a return of the $160.00 bonus.

However, we are not willing to concede that the Commissioner acted erroneously in forfeiting that lease on April 6, 1938. On the contrary, it is our conviction that the Commissioner's action was proper and timely, for the reasons which we shall now point out.

We quote from the deferred rental clause of the lease dated June 1, 1936, as follows:

"If operations for the drilling of a well for oil or gas are not commenced on said land on or before <u>one year from this date</u>, this lease shall terminate as to both parties, unless the lessee shall, <u>on or before one year from this date</u>, pay or tender to the lessor or for the lessor's credit in the Trent State Bank at Goldthwaite, Texas, * * * the sum of fifty cents rental per acre, which shall operate as rental and cover the privilege of deferring commencement of drilling operations for a period of one year." (Emphasis supplied.)

Unquestionably, under the authorities, the date referred to in the underlined phrases of the quoted portion of the lease, is the date upon which the lease was executed.

The phrase "this date", appearing in a written instrument, refers to the date of execution of the instrument. It has the same meaning as "the present date." Covey v. Town of Waynoka, 284 P. 293, 294, 141 Okl. 154; Harrison v. Reed, 197 P. 159, 160, 81 Okl. 149; 41 Words & Phrases (Perm. ed.) 583, 584.

A similar expression, "this day", has been held to refer to the time the writing was entered into by the parties. Renshaw v. First Nat. Bank, (Tenn.) 63 S. W. 194.

The date upon which the instrument was entered into is set out in the first paragraph of the lease, which we quote as follows:

"This agreement made and entered into the <u>1st day of June, 1936</u>, by and between Glenn O. Ashton, a feme sole, of Hamilton County, Texas, hereinafter called lessor * * * , and Clifford Ashton, * * * hereinafter called lessee." (Emphasis supplied.)

It is obvious, therefore, that under the express terms of the lease, the first rental was due and payable one year after June 1, 1936, being June 2, 1937, and that such payment was more than ten months past due on April 6, 1938, when the Commissioner forfeited the lease.

We find no language in the instrument which may be construed as making such rental due and payable one year after the date the lease was to go into effect. If the parties intended that the first rental was to become due one year after the alleged effective date, they have not expressed such intent in the instrument.

The only portion of the lease which contains language referring to the alleged effective date is the following paragraph, which we quote:

"The said lessor, Glenn O. Ashton, being agent for the State of Texas, in the leasing of said lands; and it is further agreed that this lease shall run for a term of ten years from the expiration of the original lease, held by the Amarada Pet. Corporation, which expires on June 2, 1937."

This paragraph is susceptible of the interpretation that it merely sets out the term of the lease and not its effective date. It does not state definitely that June 2, 1937, is the effective date of the lease.

However, granting that the parties intended that the lease go into effect on that date, the instrument nowhere declares that the deferred rental payments should date from that time.

The unexpressed intent of the parties cannot supplant the clear intent stated in the instrument. Parol evidence aliunde cannot vary the express terms of the instrument. 17 Tex. Jur. 862, Sec. 391.

It is, therefore, the opinion of this department and you are so advised, that Clifford Ashton is entitled to neither of the refunds he claims.

Trusting that we have fully answered your inquiry, we are

APPROVED AUG 7, 1941                    Yours very truly

/s/ Grover Sellers              ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT                 By  /s/ Peter Maniscalco
ATTORNEY GENERAL                        Peter Maniscalco
                                            Assistant

PM:lh

APPROVED OPINION COMMITTEE
By  B. G.   Chairman